[Cite as *In re K.T.*, 2017-Ohio-2638.]

STATE OF OHIO )
)ss:
COUNTY OF SUMMIT )

IN RE: K.T.
M.G.
A.G.

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

C.A. Nos.    28411
28424
28427
28440

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 13-08-0520
DN 13-08-0521
DN 13-08-0522

DECISION AND JOURNAL ENTRY

Dated: May 3, 2017

SCHAFER, Presiding Judge.

{¶1}    Appellants, Taylor W. ("Mother"), Timothy G. ("Father G."), William T. ("Father T."), and Patricia W., the maternal grandmother ("Grandmother"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted permanent custody of three minor children to Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}    Mother is the biological mother of M.G., born January 4, 2009; A.G., born October 6, 2011; and K.T., born August 13, 2013. Father G. is the biological father of M.G. and A.G. and Father T. is the biological father of K.T. Grandmother was permitted to intervene in the trial court proceedings and later moved for legal custody of the three children.

{¶3} On August 21, 2013, CSB filed complaints alleging that all three children were dependent because of domestic violence and substance abuse in the home. Father T. was later convicted of domestic violence against Mother but was placed on community control.

{¶4} The children were adjudicated dependent and placed in the temporary custody of CSB. None of the parents made sufficient progress on the reunification goals of the case plan. In fact, Mother and Father T. continued their volatile relationship with each other, in violation of the no contact order, and Mother continued to abuse drugs. Mother was convicted and incarcerated after she gave methadone to K.T. during a visit that was supposed to be supervised by a maternal aunt. The aunt had left the home and, although Grandmother remained in the home, she did not supervise Mother's contact with K.T. Father T. was later incarcerated for violating the terms of his community control. Father G. left the state for more than a year and had no contact with CSB or the children.

{¶5} CSB moved for permanent custody of the children. Alternatively, Grandmother moved for legal custody of all three children and Father G. moved for legal custody of his two children. During the hearing, Mother and Father T. conceded that the children could not be returned to their custody, but they supported Grandmother's request for legal custody.

{¶6} Following the final hearing, the trial court terminated parental rights and placed the children in the permanent custody of CSB. In its original judgment, however, the trial court made only one finding on the first prong of the permanent custody test: that the children had been in the temporary custody of CSB for 12 or more months of a consecutive 22-month period. This Court reversed the initial permanent custody judgment on appeal because all parties conceded that the "12 of 22" ground was not properly before the trial court. *See In re K.T.*, 9th

Dist. Summit Nos. 28152, 28169, 2016-Ohio-5812. This Court reversed and remanded to the trial court "for further proceedings." *Id.* at ¶ 1, 11.

{¶7} On remand, the trial court made new findings and conclusions based on the evidence presented at the original hearing, again granting permanent custody of the children to CSB. In its judgment entry on remand, the trial court found that the children could not be placed with a parent within a reasonable time and that permanent custody was in their best interest. *See* R.C. 2151.414(B)(1)(a) and R.C. 2151.414(D). Consequently, it denied the alternative legal custody motions filed by Grandmother and Father G.

{¶8} The trial court found that CSB established the first prong of the permanent custody test because Father G. abandoned his children, *see* R.C. 2151.414(E)(10); Mother and Father T. conceded that the children could not be placed with them within a reasonable time, *see* R.C. 2151.414(E)(16); and that the children could not be placed with Mother because she had drugged K.T. with methadone and was incarcerated for convictions of endangering children and corrupting another with drugs for those actions. *See* R.C. 2151.414(E)(7).

{¶9} Before the trial court issued its new judgment on remand, Mother and Father T. filed a joint "Notice of Withdrawal of Voluntary Relinquishment of Parental Rights" and Mother, both fathers, the attorney for the children, and Grandmother jointly filed a motion to dismiss the case without prejudice or to terminate CSB's temporary custody of the children. The trial court overruled those motions in its new permanent custody judgment.

{¶10} Mother, Father T., Father G., and Grandmother separately appealed and their appeals were later consolidated. Their assignments of error have been rearranged and consolidated for ease of review.

## II.

## Scope of Appeal after Remand

{¶11} This Court reversed the trial court's original judgment because it erroneously found that the "12 of 22" ground had been satisfied and had based its first prong finding solely on that ground. We did not address the remaining assignments of error because they had been rendered moot and we remanded the case to the trial court "for further proceedings." *In re K.T.*, 9th Dist. Summit Nos. 28152, 28169, 2016-Ohio-5812, at ¶ 10-11. Although the trial court issued a new permanent custody judgment on remand, "issues beyond the scope of a previous remand are beyond the scope of review following a return of the case from remand." *State ex rel. National Elec. Contrs. Assn. v. Ohio Bureau Emp. Servs.*, 88 Ohio St.3d 577, 579 (2000), citing *State v. Gillard*, 78 Ohio St.3d 548, 549 (1997). In this appeal, the parties cannot litigate issues that were, or could have been, raised in the first appeal. *State v. D'Ambrosio*, 73 Ohio St.3d 141, 143 (1995). In other words, the appellants are limited to raising issues that pertain to the action of the trial court following remand or assignments of error that they raised in the prior appeal but were not addressed by this Court because they were moot. *See In re T.G.*, 9th Dist. Wayne No. 04CA0040, 2004-Ohio-5173, ¶ 8-9.

{¶12} Grandmother is the only party who raised assignments of error in the prior appeal that were not addressed. Consequently, the other parties are limited to raising arguments that solely pertain to the trial court's conduct on remand. To the extent that their assigned errors also challenge the original trial court proceedings, those arguments are beyond the scope of this appeal and will not be addressed. We will first address assignments of error pertaining to the trial court's action after this Court reversed the original judgment and remanded the case to the trial court.

**MOTHER'S ASSIGNMENT OF ERROR I**
**GRANDMOTHER'S ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT DISMISSING THE CASE WITHOUT PREJUDICE, [OR] IN THE ALTERNATIVE, IN NOT TERMINATING SUMMIT COUNTY CHILDREN SERVICES BOARD'S TEMPORARY CUSTODY OF THE CHILDREN.

{¶13} Grandmother joins with Mother in presenting the same assigned error and argument. They argue that, on remand, the trial court erred in denying their motion to dismiss the case or, alternatively, to terminate the order of temporary custody because the children had been in the temporary custody of CSB for more than 38 months, longer than the period permitted by R.C. 2151.353(G).

{¶14} The day after this Court reversed and remanded the original permanent custody judgment, the parents, Grandmother, and the attorney for the children filed a consolidated motion to dismiss this case, relying on R.C. 2151.415(D)(4). On appeal, they also rely on identical language from R.C. 2151.353(G). In relevant part, and with emphasis added by this Court, those subsections provide:

> [T]he [trial] court *shall not order an existing temporary custody order to continue* beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to [R.C. 2151.415(D)].

{¶15} Focusing primarily on the mandatory "shall not" language, they assert that the trial court erred by failing to dismiss the case because it lacked authority to circumvent the intent of the legislature. The plain language of R.C. 2151.415(D)(4) and 2151.353(G), however, prohibited the trial court from "order[ing] an existing order of temporary custody" to continue beyond the two-year sunset date.

{¶16} After this Court reversed and remanded the original permanent custody judgment, the trial court did not order an extension of temporary custody. Instead, faced with a reversal of

its original judgment, the trial court proceeded to issue a new permanent custody judgment. Because Mother and Grandmother have failed to demonstrate that the trial court violated the language of R.C. 2151.415(D)(4) and R.C. 2151.353(G), the trial court did not err in failing to dismiss the case. The first assignments of error of Mother and Grandmother are overruled.

### MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED MOTHER'S RIGHTS TO DUE PROCESS IN GRANTING PERMANENT CUSTODY AFTER MOTHER WITHDREW HER VOLUNTARY RELINQUISHMENT OF PARENTAL RIGHTS.

### FATHER T.'S ASSIGNMENT OF ERROR

THE TRIAL COURT VIOLATED FATHER [T.'S] DUE PROCESS RIGHTS AND COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY WITHOUT HEARING AFTER FATHER WITHDREW HIS VOLUNTARY [RELINQUISHMENT] OF PARENTAL RIGHTS.

### FATHER G.'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN, UPON REMAND, IT FAILED TO RECOGNIZE THAT [FATHER T.] WITHDREW HIS CONSENT TO [] PERMANENT CUSTODY AND IT FAILED TO HOLD A HEARING ON THE PERMANENT CUSTODY MOTION.

### FATHER G.'S ASSIGNMENT OF ERROR II

THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THE EVIDENCE IS INSUFFICIENT TO SUPPORT A CLEAR AND CONVINCING FINDING.

{¶17} Some of the arguments raised under these assignments of error will not be addressed because they are not properly before us in this appeal. Father G. lacks standing to raise an argument on behalf of Father T. because they are not parents of the same children. Also, Mother and the fathers cannot now challenge procedures or evidence at the permanent custody hearing because they did not raise those challenges in the prior appeal.

{¶18} To the extent that these assignments of error are within the scope of this appeal, they raise two issues: (1) whether the trial court was required to hold a new permanent custody hearing on remand, and (2) whether Mother and Father T. should have been permitted to withdraw their prior agreement that they should not receive custody of the children. Although the arguments are interrelated, we will address each issue in turn.

### New Hearing

{¶19} On appeal, the parents argue that the trial court was required to hold a new hearing, but they cite no legal authority to support that argument. In the prior appeal, this Court reversed the prior judgment solely because the trial court's "12 of 22" finding was improper and we remanded the case to the trial court "for further proceedings." *In re K.T.*, 9th Dist. Summit Nos. 28152, 28169, 2016-Ohio-5812, at ¶ 1, 11. The sole reversible error was the trial court's factual finding on the first prong of the permanent custody test. *Id*. at ¶ 9. Although CSB had alleged and presented evidence on alternative grounds, the trial court based its first prong finding solely on the "12 of 22" ground, which all parties conceded on appeal was reversible error. *Id*. at ¶ 4-5, 9. Consequently, this Court reversed the decision for the trial court to correct that error. *Id*. at ¶ 11.

{¶20} A new hearing would have been required if this Court had mandated that the trial court hold a new hearing or if it had reversed the permanent custody judgment based on an error that occurred during the trial court proceedings. *See, e.g*., *In re C.S.*, 9th Dist. Wayne No. 05CA0079, 2006-Ohio-1909, ¶ 12 (second judgment reversed because trial court failed to follow mandate on remand to hold a new permanent custody hearing); *In re T.R.*, 9th Dist. Summit Nos. 25179, 25213, 2010-Ohio-2431, ¶ 25-26 (judgment reversed because evidence in the record failed to demonstrate that permanent custody was in the best interest of the children); *In re*

*Walker*, 162 Ohio App.3d 303, 2005-Ohio-3773, ¶ 14-21 (11th Dist.) (case was reversed because improper evidence, which was intertwined with admissible evidence, was admitted at the permanent custody hearing); *In re S.R.,* 9th Dist. Summit No. 27209, 2014–Ohio–2749, ¶ 34 (original judgment reversed and remanded because Father was not included in the case plan).

**{¶21}** Reversal of a permanent custody decision solely because of errors in the trial court's factual findings does not necessarily require the trial court to hold a new permanent custody hearing. This same issue was raised in *In re Arnold*, 3d Dist. Allen No. 1-06-04, 2006-Ohio-2794, an appeal after reversal and remand of a permanent custody decision for "further proceedings" because of an error in the trial court's "12 of 22" finding. The court rejected the appellant's argument that a new trial was required on remand, reasoning that, in similar situations in which only the trial court's factual findings were defective, "we have not required a new evidentiary hearing and have permitted the court to make the proper findings based on the previous record." *Id*. at ¶ 8. The court further emphasized that the appellant had pointed to no legal authority that would require a new hearing on remand.

**{¶22}** In this case, the trial court was in the best positon to determine whether a new hearing was necessary or whether it could issue a proper first prong finding based on the evidence that it had already heard. Moreover, the parents did not move the trial court to hold a new hearing on remand, nor did they make any legal argument on the record that a new hearing was necessary. In fact, the day after this Court reversed the original permanent custody judgment, Mother, both fathers, Grandmother, and the attorney for the children filed a motion to dismiss the case and argued that the trial court lacked statutory authority to extend the proceedings any further. Therefore, the parties have failed to demonstrate that the trial court erred by failing to conduct a new permanent custody hearing on remand.

Purported Relinquishment of Parental Rights

**{¶23}** Next, Mother and Father T. argue that they should have been allowed to withdraw their "voluntary relinquishment of parental rights." To begin with, despite their argument to the contrary, Mother and Father T. did not agree to relinquish their parental rights during the permanent custody hearing. Although they initially sought to relinquish their parental rights, they also expressed their desire to continue participating in the hearing to present evidence and argue that legal custody to Grandmother was in the best interest of the children. Had Mother and Father T. actually relinquished their parental rights, they would have also surrendered their residual parental rights and agreed that it was in the children's best interest to be placed in the permanent custody of CSB. *See In re A.P.*, 9th Dist. Medina No. 13CA0083-M, 2015-Ohio-206, ¶ 22.

**{¶24}** In other words, an actual relinquishment of their parental rights would have precluded them from arguing that the children should be placed in Grandmother's custody, a disposition that would have required them to retain their residual parental rights. *See id.* at ¶ 22-23. The parties discussed that issue during the hearing and the trial court later explained in its judgment entry on remand that it was accepting the purported voluntary relinquishment of the parental rights of Mother and Father T. as a stipulation to the first prong of the permanent custody test under R.C. 2151.44(E)(16).

**{¶25}** Upon this Court's reversal of the permanent custody decision, their parental rights were temporarily reinstated, but only until the trial court issued its new permanent custody judgment on remand. *See In re A.P.*, 2015-Ohio-206, at ¶ 23. Mother and Father T. have failed to demonstrate that they had a right on remand to withdraw their stipulations that the children could not be returned to their custody. Their argument is premised on their positon that the trial

court was required to hold a new evidentiary hearing on remand. This Court has already concluded that the trial court was not required to hold a new hearing. Consequently, it did not err in considering the evidence that was already before it at the original hearing, including that Mother and Father T. stipulated that the children could not be returned to their custody.

{¶26} Because the parties have failed to demonstrate that the trial court erred in failing to hold a new permanent custody hearing or in refusing to permit Mother and Father T. to withdraw their prior stipulation to R.C. 2151.414(E), their assignments of error are overruled.

Assignments of Error from Prior Appeal

{¶27} Grandmother raised her remaining assignments of error in the prior appeal, but this Court did not address them because they had been rendered moot by the reversal of the permanent custody decision on "12 of 22" grounds. Therefore, we will address them in this appeal.

**GRANDMOTHER'S ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED MOTHER'S AND FATHER'S PARENTAL RIGHTS RATHER THAN GRANTING LEGAL CUSTODY TO MATERNAL GRANDMOTHER.

{¶28} Grandmother's second assignment of error is that the trial court erred when it granted permanent custody to CSB instead of awarding legal custody to her. Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with

either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶29} On remand, the trial court found, among other reasons, that CSB satisfied the first prong of the permanent custody test because Father G. abandoned his children and Mother and Father T. agreed that the children could not be placed with them because of their long-term incarcerations. Grandmother does not challenge those findings but confines her assignment of error to the trial court's determination that permanent custody was in the children's best interest.

{¶30} Because the trial court's decision whether to place the children in the legal custody of Grandmother was also based on the best interest of the children, "this Court typically conducts a single 'best interest' review of the trial court's decision to place the child[ren] in the permanent custody of the agency rather than in the legal custody to a relative." *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 10, quoting *In re T-G.M.*, 9th Dist. Summit No. 25858, 2011-Ohio-3940, ¶ 13. If permanent custody is in the children's best interest, legal custody to Grandmother necessarily is not. "'Consequently, this Court will review the factors set forth in R.C. 2151.414(D) in reviewing the [best interest] decision of the trial court * * *.'" *Id.*

{¶31} When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, the custodial history of the children, and their need for permanence in their lives. *See In re R.G.,* 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11.

{¶32} The evidence was not disputed that Grandmother's interaction with the children during visits was usually positive and she and the children loved each other. CSB had

investigated Grandmother as a potential temporary placement for the children at the beginning of this case but did not approve her because she had long-term, untreated mental health problems and the agency did not believe that she could protect them from their parents. The children were living with Grandmother when this case began and, although Grandmother was aware of the domestic violence between Mother and Father T. and their serious drug problems, she had done nothing to protect the children from those ongoing dangers. More than one year after this case began, Grandmother admitted to another CSB kinship worker that Mother took advantage of her and she was unable to do anything about it. By the time of the final dispositional hearing, Grandmother reported that she was taking psychiatric medication but was not engaged in any counseling. Nonetheless, she had refused to sign releases to allow CSB to communicate with her mental health providers.

{¶33} Moreover, during one home visit between Mother and the children, Grandmother permitted Mother to be alone in her bedroom with K.T. During that unsupervised contact, Mother administered methadone to the child, which was discovered hours later when K.T. exhibited symptoms and the foster parents took her to the hospital. Grandmother was present in the home when Mother gave the child methadone, was aware that Mother's visits were required to be supervised because of her serious drug problem, but did not supervise Mother to prevent her from injuring the child. Moreover, Grandmother minimized the incident and accepted no responsibility for her role in failing to protect K.T. She blamed the aunt who was responsible for supervising the visit. Grandmother did not dispute, however, that she knew that the aunt had left the home and that she was the only one there to supervise Mother's interaction with the children.

{¶34} The oldest child, M.G., suffered from post-traumatic stress disorder and was involved in regular counseling throughout this case. The counselor also expressed concern that

Grandmother had lived with M.G. while she was being exposed to domestic violence and drug use, yet did nothing to protect her or remove her from that unsafe environment. The counselor further testified that M.G. confided to her that, during an earlier supervised visit with Mother at her home, Father T. had also come to the visit, in violation of a no contact order. Although M.G. did not mention a court order, she knew that Father T. was not allowed to attend because Mother and Grandmother told her not to tell anyone that he had been there. M.G. discussed the incident with her counselor because she agonized about Mother and Grandmother telling her to lie.

{¶35} On the other hand, several witnesses testified that the children felt safe in the foster home, and that all of their basic and special needs were being met. The children were closely bonded with the entire family. They had lived in that home for one and one-half years and the foster parents were interested in adopting all three children. The foster mother testified that she had been facilitating visits with Grandmother and would be willing to continue to do so if CSB received permanent custody and she adopted the children. She realized that the children love Grandmother and want to continue a relationship with her.

{¶36} The children had not expressed wishes about where they wanted to live. M.G., the oldest child, did not know where she wanted to live. The younger children were only two and four years old at the time of the hearing, so the guardian ad litem spoke on their behalf. She opined that permanent custody was in the best interest of the children because she did not believe that Grandmother had the ability to protect them. She also emphasized that the foster parents had provided the children with a safe, stable, and structured home and were interested in providing them with a permanent home.

{¶37} The custodial history of the children had included more than two years of living in temporary placements. They were in need of a legally secure permanent placement, which their

parents were unable to provide, and CSB had found no suitable relatives to provide them with a permanent home. Therefore, the trial court reasonably concluded that a legally secure permanent placement would be achieved by placing the children in the permanent custody of CSB. Grandmother's second assignment of error is overruled.

## GRANDMOTHER'S ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GIVING WEIGHT TO THE TESTIMONY OF A GAL WHO PREVIOUSLY WORKED FOR CSB AND DID NOT COMPLETE HER DUTIES AS REQUIRED BY STATUTE.

{¶38} Grandmother's third assignment of error states that the trial court erred in "giving weight" to the testimony of the guardian ad litem, because she did not fully investigate Grandmother as a potential legal custodian and she was probably biased because she worked for CSB many years ago. Although Grandmother cross-examined the guardian about the depth of her investigation and her prior employment at CSB, the crux of Grandmother's argument is that the trial court erred in admitting and considering the report and testimony of the guardian ad litem.

{¶39} Grandmother did not object to the admission of the report or testimony, however, nor did she ask the trial court to continue the hearing so that the guardian ad litem could conduct a more thorough investigation of Grandmother as a potential custodian for the children. Therefore, Grandmother must demonstrate that it was plain error for the trial court to consider the report and testimony of the guardian ad litem. *See In re S.H.*, 9th Dist. Summit Nos. 27574, 27589, 27595, 2015-Ohio-1259, ¶ 44.

{¶40} "This Court has not determined whether the civil or criminal plain error standard applies in cases involving the termination of parental rights." *In re S.C.*, 9th Dist. Summit No. 27676, 2015-Ohio-2623, ¶ 12. The criminal plain error standard requires proof that, "but for the

error, the outcome of the trial would have been different and that reversal is necessary to prevent a manifest miscarriage of justice." *State v. White,* 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 57. The civil standard applies only in "the extremely rare case involving exceptional circumstances where error * * * seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson,* 79 Ohio St.3d 116 (1997), syllabus. Grandmother has not argued plain error, nor does the record demonstrate that the failure of the guardian ad litem to more thoroughly investigate Grandmother rose to the level of plain error under either standard.

{¶41} As explained already, the trial court heard evidence from several witnesses that, from the beginning of this case, CSB was concerned about Grandmother's ability to protect the children from their parents' drug use and domestic violence. Grandmother had failed to protect the children from Mother and Father T. while she lived with the family before this case began. During this case, Mother was able to drug the youngest child while Grandmother should have been supervising her interaction with the children because the aunt had left the home. Grandmother had also allowed Father T. to come to a prior visit in violation of a no contact order and told M.G. not to tell anyone. CSB also remained concerned that Grandmother had her own mental health problems, was not fully engaged in treatment, and refused to sign releases for the agency to speak to any of her mental health providers.

{¶42} Even if Grandmother could demonstrate that the investigation of the guardian ad litem was insufficient in this case, it was Grandmother's own behavior, not the opinion of the guardian ad litem, that convinced the trial court that Grandmother could not provide a suitable permanent placement for the children. Grandmother has failed to demonstrate that the admission

of the testimony or report of the guardian ad litem constituted plain error. Grandmother's third assignment of error is overruled.

### III.

{¶43} To the extent the assignments of error were properly before this Court on appeal after remand, they are overruled. The issues not properly raised in this appeal were not addressed. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

JULIE A. SCHAFER
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

GREGORY A. PRICE, Attorney at Law, for Appellant.

NEIL AGARWAL, Attorney at Law, for Appellant.

DENISE E. FERGUSON, Attorney at Law, for Appellant.

PAM HAWKINS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

JOE KERNAN, Attorney at Law, for Appellee.