[Cite as *In re A.T.*, 2016-Ohio-5907.]

STATE OF OHIO )                IN THE COURT OF APPEALS
                    )ss:            NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

IN RE: A.T.                        C.A. No.      28220
        B.T.
        D.T.
        C.Q.
        H.Q.                       APPEAL FROM JUDGMENT
                                   ENTERED IN THE
                                   COURT OF COMMON PLEAS
                                   COUNTY OF SUMMIT, OHIO
                                   CASE Nos.    DN 13-10-694
                                                DN 13-10-695
                                                DN 13-10-696
                                                DN 13-10-697
                                                DN 13-10-698

DECISION AND JOURNAL ENTRY

Dated: September 21, 2016

HENSAL, Judge.

{¶1}   Appellant, Kelly Q. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her five minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court reverses and remands.

I.

{¶2}   Mother is the biological mother of five minor children: A.T., born January 20, 2003; B.T., born January 17, 2006; D.T., born August 23, 2007; C.Q., born October 24, 2008; and H.Q., born March 28, 2010. During August 2013, CSB became involved with this family because Mother and the father of B.T., C.Q, and H.Q. ("Father Q.") were living in a condemned home that was filthy and lacked adequate food and running water. The children had not been

attending school regularly and had emotional and behavioral problems. CSB was also concerned about Mother's mental health because she had recently been hospitalized in a psychiatric ward but was not then involved in mental health treatment. The parents entered into a voluntary case plan with CSB, which is not part of the record, but apparently involved CSB and other service providers assisting the parents in obtaining more appropriate housing and working on their other parenting problems.

{¶3} On October 30, 2013, CSB filed complaints to allege that all five children were neglected and dependent because the parents were not complying with all requirements of the voluntary case plan. The trial court later adjudicated the children dependent, adopted the case plan, and allowed the children to remain in Mother's legal custody under an order of protective supervision. The case plan required Mother to address her mental health problems, maintain suitable housing, and demonstrate that she could consistently provide for the children's needs.

{¶4} On December 8, 2014, CSB moved the trial court to remove the children from Mother's home and place them in its temporary custody because Mother was not consistently complying with the goals of the case plan. On December 26, 2014, the children were removed from Mother's custody because the home was not sanitary, the children continued to have behavioral problems and excessive school absences, and both fathers had been convicted and/or found in violation of community control for illegal drug activity. Although the case plan was amended in that respect, it did not add new goals or services for Mother.

{¶5} CSB had initially supported the request of the father of A.T. and D.T. (Father T.) for temporary custody of his children and later supported his request for legal custody of D.T. after A.T. was removed from his home for severe behavioral problems. Father T. later died of a drug overdose, however.

{¶6} Because CSB believed that Mother and Father Q. had not substantially complied with the reunification goals of the case plan, it eventually moved for permanent custody of all five children. Mother alternatively moved for legal custody of the children and Father Q. supported her request.

{¶7} The matter proceeded to a hearing on the alternate dispositional motions. All children were represented by counsel because they had expressed wishes that were in conflict with the recommendation of the guardian ad litem. A.T. was represented by his own attorney because he wanted to be placed with an aunt. The other children were represented by another attorney because they wanted to return to Mother's custody.

{¶8} The evidence presented by CSB focused primarily on the parents' lack of case plan progress from October 2013 to December 2014, when the children remained in the home under the protective supervision of CSB. The evidence about Mother's progress on the case plan after the children were removed from the home was primarily positive. She had obtained safe and suitable housing, was receiving mental health treatment, and reported that she was employed but had not provided verification to CSB. Mother visited the children regularly, interacted appropriately with each one of them, and the children were always happy to see her. The caseworker even observed that Mother made an effort to interact with each one of the children and was able to limit the potential chaos of visiting with five children by keeping track of the time and giving them a 10-minute warning to prepare to end each visit. Although CSB attempted to fault Mother for failing to comply with the substance abuse component of the case plan, the case plan included no substance abuse component for Mother, nor had Mother otherwise been ordered to undergo substance abuse treatment or drug testing by the trial court.

{¶9}    Similarly, the guardian ad litem based his assessment of the children's best interests on the lack of case plan progress and the condition of the parents' home 17 months earlier, before the children were removed from the home.  He had not attempted to assess the current condition of the family home because the children no longer lived there and he did not "think that there's a chance" that they would "end up in [that] home."  In fact, the guardian testified at the hearing that he did not investigate the parents' compliance with mental health treatment or other any aspects of the case plan during the 16 months that the children had lived outside the family home.

{¶10}    After the hearing, the trial court found that the children could not be returned to either parent or should not be returned to them and that permanent custody was in their best interests.  Mother appeals and raises two assignments of error.  Although Father Q. did not appeal from the trial court's judgment, he entered an appearance as an appellee and filed a brief to support Mother's assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED MOTHER'S AND FATHER'S PARENTAL RIGHTS RATHER THAN GRANTING LEGAL CUSTODY TO MOTHER.

{¶11}    Mother's first assignment of error is that the trial court's permanent custody decision was not supported by the evidence presented at the hearing.  Before a juvenile court may terminate parental rights and award permanent custody of children to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; they or another child in a parent's

custody have been adjudicated abused, neglected, or dependent on three separate occasions; or they cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶12} Although Mother challenges the trial court's findings on each prong of the permanent custody case, we will confine our review to the first prong because it is dispositive. The trial court found that CSB had satisfied the first prong of the permanent custody test solely based on the factor set forth in R.C. 2151.414(E)(1). R.C. 2151.414(E)(1) requires the trial court to find that the children "cannot be placed with either parent within a reasonable time or should not be placed with either parent[]" if it finds clear and convincing evidence to demonstrate that:

> Following the placement of the child outside the child's home * * * the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

{¶13} This language is plain and unambiguous. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply rules of statutory interpretation." *State v. Kreischer*, 109 Ohio St.3d 391, 2006-Ohio-2706, ¶ 12. To make a finding under the explicit language of R.C. 2151.414(E)(1), the trial court was required to find clear and convincing evidence that the parents failed to remedy the conditions that caused the children's removal "following" their placement outside the home. These children were not placed outside Mother's home until December 26, 2014.

{¶14} The trial court's explanation for its finding under R.C. 2151.414(E)(1), however, focused solely on facts that predated the placement of the children outside Mother's home. Its

decision repeatedly emphasized that, because the parents had failed to comply with the case plan while the children remained in the home under protective supervision, they failed to remedy the conditions that caused the children's removal. Although the parents' lack of case plan progress before the children were removed demonstrate some of the "conditions" that caused the children's removal, those facts did not demonstrate that the parents had "failed continuously and repeatedly to substantially remedy" those conditions "[f]ollowing the placement of the child[ren] outside [their] home[.]"

{¶15} Consequently, the trial court's factual findings do not satisfy the explicit requirements of R.C. 2151.414(E)(1). If the trial court fails to make a proper factual finding under R.C. 2151.414, this Court cannot do so on appeal. *See, e.g., In re E.M.*, 9th Dist. Wayne No. 14AP0030, 2015-Ohio-641, ¶ 9; *In re D.K.*, 9th Dist. Summit Nos. 26272, 26278, 2012-Ohio-2605, ¶ 11; *In re E.T.,* 9th Dist. Summit No. 22720, 2005-Ohio-6087, ¶ 15. "Doing so would amount to this Court making a finding in the first instance, an act that would exceed our jurisdiction as an appellate court. *See* Ohio Constitution, Article IV, Section 3(B)(2)." *In re D.K.* at ¶ 11.

{¶16} Consequently, Mother's first assignment of error is sustained and the judgment of the trial court is reversed and remanded on that basis.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GIVING WEIGHT TO THE TESTIMONY OF A GAL WHO DID NOT COMPLETE HIS DUTIES AS REQUIRED BY STATUTE.

{¶17} Because Mother's first assignment of error is dispositive, her second assignment of error has been rendered moot and will not be addressed. *See* App.R. 12(A)(1)(c).

III.

{¶18}  Mother's first assignment of error is sustained and her second assignment was not addressed.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee Summit County Children Services Board.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

KANI HARVEY HIGHTOWER, Attorney at Law, for Appellee.

LINDA BENNETT, Guardian ad Litem.