[Cite as *In re A.T.*, 2017-Ohio-4051.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.T.
     B.T.
     D.T.
     C.Q.
     H.Q.

C.A. No.     28441

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 13-10-694
                DN 13-10-695
                DN 13-10-696
                DN 13-10-697
                DN 13-10-698

DECISION AND JOURNAL ENTRY

Dated: May 31, 2017

CARR, Judge.

{¶1} Appellant, Kelly Q. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her five minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court reverses and remands.

I.

{¶2} The facts pertaining to this case are set forth in more detail in Mother's appeal from the trial court's original permanent custody judgment. *See In re A.T.*, 9th Dist. Summit No. 28220, 2016-Ohio-5907. Mother is the biological mother of five minor children who now range in age from seven to 14 years old. One of the fathers is deceased and the other father did not appeal from the trial court's judgment.

{¶3} CSB first became involved with the family during 2013 on a voluntary basis because Mother and one of the fathers were living with the children in an unsuitable home and some of the children had behavioral problems and were not attending school regularly. CSB also alleged concerns about Mother's mental health and that she was not then involved in mental health treatment.

{¶4} On October 30, 2013, CSB filed complaints to allege that all five children were neglected and dependent because the parents were not complying with the requirements of the voluntary case plan. The trial court later adjudicated the children dependent, adopted the case plan, and allowed the children to remain in Mother's legal custody under an order of protective supervision. The case plan required Mother to maintain suitable housing, address her mental health problems, and demonstrate that she could consistently provide for the children's basic needs.

{¶5} On December 8, 2014, CSB moved the trial court to remove the children from Mother's home and place them in its emergency temporary custody because Mother was not consistently complying with the goals of the case plan. On December 26, 2014, the children were placed in the temporary custody of CSB.

{¶6} CSB later moved for permanent custody of all five children before the children had been in its temporary custody for 12 months, alleging various grounds under R.C. 2151.414(E). Following a hearing on the permanent custody motion and Mother's alternative request for legal custody, the trial court found that CSB had established the first prong of the permanent custody test because Mother had failed to substantially remedy the conditions that caused the children to remain placed outside the home. *See* R.C. 2151.414(E)(1). The trial court

also found that permanent custody was in the best interest of the children. Consequently, it terminated Mother's parental rights on March 31, 2016.

{¶7} Mother appealed the March 2016 judgment and this Court reversed and remanded to the trial court. *In re A.T.*, 2016-Ohio-5907, at ¶ 16. This Court reversed the March 2016 judgment because "the trial court's factual findings [did] not satisfy the explicit requirements of R.C. 2151.414(E)(1)." *Id*. at ¶ 15. Specifically, this Court emphasized that "[t]he trial court's explanation for its finding under R.C. 2151.414(E)(1) [] focused solely on facts that predated the placement of the children outside Mother's home." *Id*. at ¶ 14. Because this Court does not make factual findings in the first instance on appeal, it reversed and remanded to the trial court to correct the error. *Id.* at ¶ 15-16. This Court reversed the March 2016 judgment solely based on the trial court's factual findings under R.C. 2151.414(E)(1) and did not explicitly mandate the trial court to hold a new hearing and/or correct its judgment. *Id*. at ¶ 1, 18.

{¶8} After this Court's reversal and remand of a permanent custody judgment based solely on the deficiency of the trial court's factual findings, this Court has recognized that "the trial court was in the best positon to determine whether a new hearing was necessary or whether it could issue a proper first prong finding based on the evidence that it had already heard." *In re K.T.*, 9th Dist. Summit Nos. 28411, 28424, 28427, 28440, 2017-Ohio-2638, ¶ 22. On remand, the trial court entered a new judgment based on the evidence presented at the original hearing. Rather than making new factual findings, however, the court reiterated the same factual findings from the original judgment entry.

{¶9} It again found that CSB had proven that the children could not or should not be returned to Mother's custody and that permanent custody was in their best interest. On remand, it based its first prong finding on R.C. 2151.414(E)(1) and added a finding under R.C.

2151.414(E)(2). The trial court quoted from its March 2016 judgment that Mother had failed to substantially remedy her "significant mental health issues[.]" The trial court added only an implicit legal conclusion that Mother's mental health issues rose to the level of a chronic mental illness that prevented her from providing an adequate permanent home for the children at that time or within one year of the hearing. Mother appeals and raises three assignments of error, which this Court will consolidate for ease of review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT WROTE A NEW ENTRY TERMINATING MOTHER'S AND FATHER'S PARENTAL RIGHTS RATHER THAN GRANTING LEGAL CUSTODY TO MOTHER OR WITHOUT DISMISSING THE CASE.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT TERMINATED MOTHER'S AND FATHER'S PARENTAL RIGHTS RATHER THAN GRANTING LEGAL CUSTODY TO MOTHER.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GIVING WEIGHT TO THE TESTIMONY OF A GAL WHO DID NOT COMPLETE HIS DUTIES AS REQUIRED BY STATUTE.

{¶10} This Court will consolidate Mother's assignments of error because they are interrelated. Initially, this Court will dispose of two of Mother's arguments that lack merit. Specifically, she asserts that, on remand, the trial court was required to either: (1) place the children in her legal custody; or (2) dismiss the case. In the prior appeal, Mother raised the same assignment of error that she now raises as her second assignment of error: that the trial court erred by granting permanent custody to CSB rather than placing the children in her legal custody. This Court sustained that assignment of error, but it explicitly did so based on the deficiency of

the trial court's finding on the first prong of the permanent custody test. Although this Court noted in dicta that "[t]he evidence about Mother's progress on the case plan after the children were removed from the home was primarily positive[,]" it did not address the propriety of the trial court's finding that permanent custody, rather than legal custody to Mother, was in the best interest of the children. *See In re A.T.*, 2016-Ohio-5907, at ¶ 8, 12-16. Consequently, this Court's reversal did not require that the children be returned to Mother's legal custody.

{¶11} Mother also briefly argues that the trial court should have dismissed the case because it was not authorized to extend temporary custody any longer. This Court recently rejected the same argument in *In re K.T.*, 2017-Ohio-2638, at ¶ 16. That same reasoning applies here because the trial court did not order an extension of temporary custody.

{¶12} On the other hand, this Court is again faced with a permanent custody judgment that is based on deficient factual findings on the first prong of the permanent custody test. This Court reversed the trial court's original judgment because the factual findings failed to support its legal conclusion under R.C. 2151.414(E) that Mother had failed to substantially remedy the conditions after her children were placed outside the home. Specifically, this Court reviewed the trial court's factual findings and concluded that they were legally deficient because the trial court's findings focused on "facts that predated the placement of the children outside Mother's home." *In re A.T.*, 2016-Ohio-5907, at ¶ 14.

{¶13} On remand, the trial court did not hear additional evidence or make any new factual findings to support its conclusion that CSB had proven grounds for permanent custody under R.C. 2151.414(E)(1). Instead, it relied on the same evidence and restated the same factual findings that this Court found to be legally insufficient in the prior appeal. Focusing more directly on evidence about facts that occurred after the children were removed from the home,

the trial court again found that Mother had "significant mental health issues" and that she had failed to consistently engage in mental health treatment. Based on those same facts, it added an explicit finding that CSB had established the first prong under R.C. 2151.414(E)(2), based on its implicit conclusion that Mother had a chronic mental illness that prevented her from providing an adequate home for the children at that time or within the next year. R.C. 2151.414(E)(2). Consequently, this Court will review the evidence to determine whether CSB established, by clear and convincing evidence, that Mother had significant mental health issues that she failed to address through treatment and/or that she had a chronic mental illness that prevented her from providing an adequate home for her children.

{¶14} To begin with, this Court must emphasize that the time frame relevant to Mother's mental health diagnoses and her engagement in treatment was the time that the agency moved for permanent custody during October and November 2015 because "'a motion for permanent custody must allege grounds that currently exist.'" *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 24, quoting *In re K.G.*, 9th Dist. Wayne Nos. 03CA0066, 03CA0067, 03CA0068, 2004-Ohio-1421, ¶ 13. Therefore, the relevant time for the trial court to evaluate Mother's mental health and her compliance with treatment was the time that the agency moved for permanent custody. *Id.*

{¶15} No mental health experts appeared at the hearing to testify. Instead, that evidence was presented through records from three different facilities: Portage Path Behavioral Health (PPBH), the office of a psychiatrist, and Ohio Guidestone. The trial court relied almost exclusively on Mother's thoughts of suicide that were reflected in her mental health records from PPBH.

{¶16} The sole evidence that Mother had thoughts of suicide was reflected in a PPBH record on January 2, 2015, shortly after Mother's five minor children were removed from her custody and nine months before CSB moved for permanent custody of any of her children. On that evening, Mother confided to a friend that she did not want to go on without her children, so the friend took her to get help. PPBH records indicate that Mother had not taken any steps to attempt suicide, nor did she have a specific plan. She was distraught about losing her children and was admitted to PPBH for crisis intervention. Mother remained at PPBH from 9:51 p.m. that evening until she was discharged the following morning at 10:10 a.m. According to the PPBH records, Mother had no prior psychiatric admissions. There is no evidence in the record to demonstrate that Mother ever had thoughts of suicide after January 5, 2015.

{¶17} Less than two weeks after Mother was released from PPBH, she attended a scheduled follow-up appointment with a psychiatrist. He performed a mental health evaluation and diagnosed her with major depressive disorder, anxiety disorder, and panic disorder. The psychiatrist's recommendation was that Mother be treated with medication and counseling. Mother attended medication management and psychotherapy sessions at the psychiatrist's office from January 21, 2015 until October 12, 2015. She missed a total of 4 sessions during that 9-month period. The notes further indicate that Mother was medication compliant and showed improvement in her mood during most of that period. Moreover, the treatment notes throughout the entire period include comments that Mother cooperated, was motivated for treatment, maintained appropriate eye contact, spoke coherently and relevantly, and exhibited "[n]ormal thought processes with fair judgment and insight." Nothing in the expert's records suggest that Mother's mental health problems impeded her ability to care for herself or others.

{¶18} At the time CSB filed for permanent custody of the first three children on October 1, 2015, Mother was still seeing the psychiatrist and other mental health professionals at his office for both medication management and psychotherapy. She had attended an appointment at that office as recently as three days before CSB filed the permanent custody motion and Mother had signed information releases to permit CSB to communicate with that mental health provider.

{¶19} Although the records from Ohio Guidestone post-date the filing of the permanent custody motions, those records indicate that Mother's diagnoses were depression and anxiety and she was not reporting any thoughts of suicide. The severity of her symptoms was identified as "moderate." The treatment recommended was medication management and outpatient therapy. Again, nothing in those records suggested that Mother's mental health issues prevented her from caring for herself or her children.

{¶20} Moreover, there was no other evidence to demonstrate that Mother was exhibiting inappropriate behavior that was associated with her mental health diagnoses. None of the lay witnesses testified about Mother exhibiting any depressive, erratic, irrational, or hostile behavior. In fact, it was not disputed that Mother attended every scheduled visit with her children and interacted appropriately with all five of them during each visit. The caseworker observed that Mother managed all five children well and that she had never needed to redirect her behavior. The guardian ad litem conceded that he had made no attempt to communicate with any of Mother's mental health providers and that he had "no personal knowledge" of whether she had complied with the case plan.

{¶21} Before terminating parental rights, it must be established by clear and convincing evidence that (1) the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the

same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996). This Court's review of the evidence fails to reveal clear and convincing evidence to support the trial court's findings with regard to the first prong of the test that the children cannot or should not be placed with either parent based on a consideration of the factors enunciated under either R.C. 2151.414(E)(1) or 2151.44(E)(2).

{¶22} Because this court does not reach the best interest prong of the permanent custody test, this opinion should not be construed as a decision that Mother's children should be returned to her custody. Mother's assignments of error are sustained only insofar as she argues that the trial court's findings under R.C. 2151.414(E)(1) and (2) were not supported by the evidence presented at the hearing.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD KASAY, Assistant Prosecuting Attorney, for Appellee.

KANI HIGHTOWER, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.