[Cite as *In re E.S.*, 2018-Ohio-3929.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

IN RE: E.S., A.C., N.S.

C.A. No.    18CA011259

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.    15JC4719, 20
16JC49315

DECISION AND JOURNAL ENTRY

Dated: September 28, 2018

TEODOSIO, Judge.

**{¶1}** Appellant, M.S. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to three of her minor children and placed them in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of fourteen children. Some of her older children are emancipated and others have been placed in the legal custody of relatives. Only three of Mother's children are parties to this appeal: E.S., born April 26, 2008; A.C., born May 29, 2009; and N.S., born November 28, 2010. The father of these children ("Father"), who is also the father of seven of Mother's other children, did not timely appeal from the trial court's judgment, but he did file a brief as an appellee to support Mother's arguments. Although LCCS

moved to strike Father's brief, Father has the right to file a brief as an appellee to support Mother's arguments. *See In re A.T.*, 9th Dist. Summit No. 28220, 2016-Ohio-5907, ¶ 10.

{¶3} Mother has a lengthy history with LCCS, dating back more than 10 years in cases involving many of her children. Several of the prior cases have resulted in her older children being placed in the legal custody of relatives. The prior cases with Mother's children have involved the same issues: Mother's mental health and substance abuse problems and her lack of stable income and housing. LCCS has remained concerned that Mother lacked the ability to meet even her own basic needs.

{¶4} This case began with the December 2015 removal of A.C. and N.S. from Mother's custody. At that time, E.S. had been living in Father's legal custody since a prior 2009 dependency case. E.S. initially remained in Father's custody and the original reunification plan was to place A.C. and N.S. with Father, who was the more stable parent at that time. During the course of the trial court proceedings, however, Father began using illegal drugs after years of abstinence and E.S. was removed from his custody. Father continued to struggle with drug use throughout this case and Mother also failed to remedy her parenting problems.

{¶5} LCCS eventually moved for permanent custody of E.S., A.C., and N.S. and the parents alternatively requested legal custody of the children. Following a hearing on the competing dispositional motions, the trial court placed the children in the permanent custody of LCCS. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY
FINDING THAT IT WAS IN THE BEST INTERESTS OF THE CHILDREN
TO BE PLACED IN THE PERMANENT CUSTODY OF LCCS EVEN

THOUGH IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6}   Mother's sole assignment of error is that the trial court's permanent custody decision was not supported by the evidence presented at the hearing.  Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D).  *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶7}   The trial court found that LCCS satisfied the first prong of the permanent custody test for two alternative reasons: that Mother failed to remedy the conditions that caused her children to remain placed outside the home and one or more of her children had been adjudicated an abused, neglected, or dependent child on at least three separate occasions.  *See* R.C. 2151.414(E)(1) and 2151.414(B)(1)(e).  Mother does not challenge either of those findings.  Through his brief as an appellee, Father challenged the trial court's first-prong finding under R.C. 2151.414(B)(1)(e).  The issue is not properly before us on appeal, however, because Father did not file a notice of appeal to challenge the trial court's judgment.  *See* App.R. 3. Because the record fully supports the trial court's finding under R.C. 2151.414(E)(1), neither

parent was prejudiced by any error in the trial court's alternative first prong finding under R.C. 2151.414(B)(5). *See, e.g.*, *In re S.C.*, 9th Dist. Summit No. 27676, 2015-Ohio-2623, ¶ 30.

{¶8} Nevertheless, this Court will address the issue because it observed a similar legal error in another appeal that was decided before the permanent custody hearing was held in this case. *See In re A.W.*, 9th Dist. Lorain No. 17CA011123, 2017-Ohio-7786, ¶ 17. As in *In re A.W.*, the juvenile court in this case interpreted R.C. 2151.414(B)(1)(e) to allow an aggregating of adjudications of different children to reach the three adjudications required by the statute. By its unambiguous terms, however, R.C. 2151.414(B)(1)(e) requires that at least one child, whether one of these children or a sibling, be adjudicated three separate times. *See, e.g.*, *In re A.S.*, 9th Dist. Summit No. 28743, 2017-Ohio-8984, ¶ 5. In this case, although there had been numerous adjudications of many of Mother's children, the agency failed to present evidence that any one of those children had been adjudicated three times. Consequently, the trial court's conclusion that R.C. 2151.414(B)(1)(e) was satisfied was not supported by the record. Because the trial court's alternative finding under R.C. 2151.414(E)(1) was supported by clear and convincing evidence, however, its erroneous finding under R.C. 2151.414(B)(1)(e) was harmless.

{¶9} Mother challenges only the trial court's finding that permanent custody was in the best interest of the children. Most of Mother's arguments, however, focus on whether LCCS adequately assisted her and Father in working toward reunification with the children by allowing them to visit with the children separately. The record reveals, however, that the agency's failure to reunify Mother and her children was caused by a lack of case plan compliance by Mother, not by any lack of services provided by LCCS.

**{¶10}** When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the children, their wishes, the custodial history of the children, the need for permanence in the children's lives, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. *See In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. Mother makes no argument about the trial court's findings on any of the best interest factors, which were fully supported by the evidence in the record.

**{¶11}** Mother's interaction with the children throughout this case was limited to weekly, supervised visits because Mother did not comply with the substance abuse and mental health components of the case plan. Mother obtained a substance abuse assessment, but she never completed the recommended drug treatment. Although Mother points to evidence that she remained in one treatment program for 10 days, the caseworker and Mother herself contradicted that evidence by testifying that Mother remained in that program for only a few hours. Mother also testified that she never completed a mental health or substance abuse treatment program. She even admitted using drugs during this case, while she was pregnant with her fourteenth child. Moreover, Mother attended less than half of the visits that were scheduled with her children during this case. When Mother did attend visits, they were much more chaotic than when Father attended alone because Mother wanted to be fun and did not discipline the children.

**{¶12}** Although Mother wanted to visit the children without Father because she and Father did not get along, LCCS kept their visits together. In addition to the fact that Mother did not regularly attend the scheduled visits, for reasons other than failing to get along with Father, the agency explained to Mother that she would need to get along with Father if either one of

them were to receive legal custody of the children because the other parent would retain residual rights to visitation.

{¶13} Next, the trial court was required to consider the children's wishes. Although two of the children had expressed a desire to return to Father's custody, none of the children had spoken about returning to Mother's home. The guardian ad litem, who worked with this family throughout this case and had worked with Mother in one of the prior cases involving her older children, opined that permanent custody was in the best interest of these children. She explained that, for several years, Mother has repeated the same pattern of becoming overwhelmed with her life, starting and stopping reunification services, and blaming her family's situation on people other than herself. The guardian expressed concern about Mother's mental health and explained that Mother had not stayed with a mental health provider long enough to get a definitive diagnosis or obtain effective treatment.

{¶14} The children's custodial history included lengthy periods living away from Mother. Through a 2009 case, E.S. was removed from Mother's custody and placed with Father. By the time of the hearing, E.S. had lived outside Mother's custody for eight years. A.C. had also lived outside Mother's custody during the 2012 case and this case. A.C. and N.S. lived outside Mother's custody throughout this case for nearly two years.

{¶15} "'This Court has repeatedly stressed, however, that 'the time period [outside the parent's custody] in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child.'" *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 19, quoting *In re I.A.*, 9th Dist. Summit No. 26642, 2013-Ohio-360, ¶ 20, *In re C.M.*, 9th Dist. Summit No. 21372, 2003-Ohio-5040, ¶ 16, and *In re Smith*, 9th Dist. Summit No. 20711, 2002 Ohio App. LEXIS 2, *13 (Jan. 2, 2002). During the time that the

children had lived outside Mother's custody, Mother had done little to resolve her parenting problems. The children, on the other hand, had moved between temporary placements and were in need of a legally secure permanent home.

{¶16} LCCS had considered several relatives for placement, but had been unable to find any who were willing and able to provide any of these children with a suitable home. Both parents continued to struggle with substance abuse and other problems and were unable to provide the children with a stable home. The trial court reasonably concluded that a legally permanent placement would be achieved by granting LCCS permanent custody.

{¶17} Mother has failed to demonstrate that the trial court's permanent custody decision was not supported by the evidence. Her assignment of error is overruled.

III.

{¶18} Mother's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

    Costs taxed to Appellant.

_____

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

DENISE FERGUSON, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and DANIELLELA BEARDEN, Assistant Prosecuting Attorney, for Appellee.

JUSTIN MILLER, Attorney at Law for Appellee.

ROSEMARY MAHL, Guardian ad Litem.