[Cite as *In re R.P.*, 2020-Ohio-1059.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: R.P.

C.A. No.     19AP0037

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.     2017 JUV-G 172

DECISION AND JOURNAL ENTRY

Dated: March 23, 2020

TEODOSIO, Presiding Judge.

{¶1}    Appellants, R.B. and K.B. ("Grandparents"), appeal a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that awarded legal custody of their grandchild to C.R., a nonrelative.  Because the trial court placed the child in the custody of a nonparent without first finding that the child's mother was an unsuitable parent, this Court reverses and remands.

I.

{¶2}    R.P., born April 23, 2014, is the biological child of A.B. ("Mother") and A.P. ("Father").  Because Mother and Father were not married and Father did not initially establish a parent-child relationship with the child, Mother had sole legal custody of R.P. for the first three years of the child's life.  *See* R.C. 3109.042.

{¶3}    During February 2017, Father filed for emergency custody of R.P., alleging that Mother had serious drug problems.  The trial court initially established a legal parent-child relationship between Father and R.P. and granted Father parenting time with the child.  The matter

ultimately proceeded to a contested custody hearing.  On October 26, 2017, the trial court designated Father as the residential parent of R.P.  and granted Mother parenting time, to be exercised in the home of Grandparents and supervised by them.  At that time, Father was residing with his girlfriend, C.R., and other children.

{¶4}    Father died by suicide on Friday, August 10, 2018.  At the time of Father's death, R.P. was visiting Mother for the weekend at the home of Grandparents.  The following Monday, August 13, 2018, C.R. filed a motion for emergency custody of R.P., alleging that Father had died and Mother had a substance abuse problem.  Pursuant to an ex parte ruling the same day, R.P. was placed in the emergency temporary custody of C.R. and the matter was scheduled for a hearing on August 23, 2018.

{¶5}    On August 14, 2018, Grandparents filed motions for temporary custody and legal custody of R.P., also alleging that Father was deceased and that Mother was not a suitable custodian for the child.  Mother was not represented by counsel and did not file any motions or responses on her own behalf.

{¶6}    The matter proceeded to a hearing as scheduled on August 23, 2018, but the primary topic discussed at the hearing was whether the proposed custodians were required to intervene in the action to be heard on their motions.  Of significance here, the trial court did not take evidence, or make a legal determination, about whether there had been a valid reason to remove R.P. from the physical custody of Mother and place her in the emergency custody of C.R.  Instead, the trial court ordered the parties to brief the intervention issue and continued the temporary order of emergency custody of R.P. to C.R.

{¶7}    Four days later, Grandparents filed a motion to vacate the order continuing R.P. in the emergency temporary custody to C.R.  They argued, among other things, that the trial court

had improperly placed R.P. in the emergency custody of C.R. without determining that the child was at risk of harm if she had remained with Mother in the home of Grandparents. Two days later, without any explanation, the trial court denied their motion.

{¶8} The matter later proceeded to a legal custody hearing before a magistrate on December 19, 2018. Although Mother was present at the hearing, she did not testify and was not represented by counsel. Significantly, there was no evidence presented, or findings made, about the suitability of Mother. Mother is the child's surviving parent, but the trial court did not conduct an inquiry into whether R.P. should reside in her legal custody. Instead, the sole focus of the hearing was whether it would be in the best interest of R.P. to be placed in the legal custody of either C.R. or Grandparents.

{¶9} Following the hearing, the magistrate decided that it was in the best interest of R.P. to be placed in the legal custody of C.R. Grandparents filed timely objections to the magistrate's decision. They challenged the best interest finding, as well as the initial ex parte decision to remove the R.P. from Grandparents' home where she had been with Mother at the time of Father's death. The trial court later overruled Grandparents' objections and placed R.P. in the legal custody of C.R. The trial court also granted Mother parenting time to be supervised by Grandparents. Grandparents appeal and raise two assignments of error.

{¶10} During this Court's initial review of the briefs and record in this appeal, it raised an additional issue that was not directly briefed by the parties. Although Grandparents challenged whether the trial court had the authority to remove R.P. on an emergency, ex parte basis, this Court raised the broader issue of whether the trial court had authority to place R.P. in the legal custody of a nonparent without first finding that Mother was an unsuitable parent.

{¶11}  Pursuant to this Court's post-argument order, the parties submitted supplemental briefs on this issue.  Because this issue is dispositive of the appeal, this Court will confine its review to the supplemental assignment of error.

SUPPLEMENTAL ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN AWARDING LEGAL CUSTODY OF R.P. TO A NON-PARENT WITHOUT FIRST MAKING A PARENTAL UNSUITABILITY DETERMINATION.

{¶12}  Grandparents assert that the trial court lacked authority to award legal custody of R.P. to C.R., a non-parent, without first making a finding that Mother was unsuitable.  This Court agrees.

{¶13}  Analysis of this issue requires a brief review of the relevant facts.  During 2017, Father pursued an award of custody of R.P. through proceedings in the juvenile court because he was never married to Mother and had not legally established his parental rights.  *See* R.C. 2151.23(A)(2).  Father sought custody of R.P. and alleged that Mother had drug problems and was facing criminal changes.  Although Father implied that Mother was not a suitable parent, his request for custody of R.P. proceeded through the juvenile court under R.C. 3109.04 as an action to allocate parental rights and responsibilities between two unmarried, but presumptively fit, parents.  During the proceedings between Father and Mother, the trial court ultimately designated Father as the residential parent and placed restrictions on Mother's parenting time with R.P.

{¶14}  Notably, the trial court's 2017 designation of Father as the residential parent under R.C. 3109.04 was explicitly based on the best interest of the child.  The trial court did not make a legal determination that Mother was an unfit or unsuitable parent.  Consequently, at that time, Mother retained her fundamental parental rights to R.P.

{¶15} Consequently, after Father's death, legal custody of R.P. would have reverted to Mother, the child's sole surviving parent. The fundamental right of a parent to the custody of his or her child is one of the oldest liberty interests recognized by American courts. *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 10. For that reason, "Ohio courts have sought to effectuate the fundamental rights of parents by severely limiting the circumstances under which the state may deny parents the custody of their children." *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 17, citing *In re Perales*, 52 Ohio St.2d 89 (1977), syllabus.

{¶16} In *Perales*, the Ohio Supreme Court reiterated its reasoning from a century earlier that "parents who are 'suitable' persons have a 'paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children." *In re Perales*, 52 Ohio St.2d at 96-97, citing *Clark v. Bayer*, 32 Ohio St. 299 (1877), paragraphs one and two of the syllabus. A parent's unsuitability under one of the *Perales* factors must be explicitly found by the trial court, after being established by a preponderance of the evidence. *Perales* at paragraph one of the syllabus.

{¶17} C.R. attempts to distinguish *Perales* and cases that have followed it by emphasizing that this body of case law has developed in custody disputes between a parent and nonparent. Although most cases in this area have involved disputes between a parent and nonparent, they do not support C.R.'s implicit argument that parents must move for legal custody to retain their parental rights or that nonparents can bypass the parent in order to obtain custody of a child. Ohio case law has explicitly restricted the circumstances under which the state may intervene to award legal custody to a nonparent. The principle of protecting a parent's fundamental right to raise her child does not hinge on whether the parent has filed her own motion for custody.

{¶18}  Moreover, the cases cited by C.R. about disputes between nonparents are cases that involved custody proceedings after a child had been adjudicated dependent or both parents were deceased.  *See In re J.R.P.*, 7th Dist. Mahoning No. 17 MA 0169, 2018-Ohio-3968; *P.K. v. J.V.*, 5th Dist. Stark No. 2018CA00050, 2018-Ohio-5383.  These cases do not apply to the facts of this case.  R.P. has a surviving parent and, although the Supreme Court has held that an adjudication of a child as an abused, neglected, or dependent child constitutes an implicit finding of parental unsuitability, there has been no adjudication of R.P. as an abused, neglected, or dependent child.  *See In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus.

{¶19}  C.R. points to no legal authority, nor is this Court aware of any, that permitted the trial court to ignore the fundamental parental rights of Mother, merely because she did not formally request custody of her own child.  R.P. was with Mother at the time Father died until she was removed from that home through an ex parte proceeding.  Despite C.R.'s arguments to the contrary, there is nothing in the record to suggest that Mother voluntarily, knowingly, and intelligently relinquished or abandoned her parental rights to R.P.  Moreover, even if there were such evidence, this Court cannot make a *Perales* unsuitability finding in the first instance on appeal.  *See In re A.T.*, 9th Dist. Summit No. 28441, 2017-Ohio-4051, ¶ 7.

{¶20}  After Father's death, Mother was the only surviving parent of R.P. and had a fundamental and paramount right to the custody of her child.  Absent a threshold judicial finding that Mother was unsuitable, through a proceeding that conformed to the requirements of *Perales*, the trial court lacked authority to place R.P. in the legal custody of either C.R. or Grandparents, as they were nonparents who did not have fundamental rights to the custody of the child.  *See In re A.C.*, 9th Dist. Summit No. 23154, 2006-Ohio-6155, ¶ 9.  The supplemental assignment or error is sustained.

III.

{¶1}    The supplemental assignment of error is sustained.  The remaining assignments of error were not addressed because they have been rendered moot.  The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
HENSAL, J.
CONCUR.

APPEARANCES:

JOHN E. JOHNSON, JR., Attorney at Law, for Appellant.

BRADLEY R. HARP, Attorney at Law, for Appellee.