**[Cite as *In re Q.C.*, 2021-Ohio-3993.]**

STATE OF OHIO   )
          )ss:
COUNTY OF SUMMIT  )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: Q.C.
  E.C.
  A.C.

C.A. Nos.  29988
       29989
       29990

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.  DN 19 07 0574
       DN 19 07 0573
       DN 19 07 0572

DECISION AND JOURNAL ENTRY

Dated: November 10, 2021

HENSAL, Presiding Judge.

{¶1} Appellant, J.P. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her three minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court reverses and remands.

I.

{¶2} Mother is the biological mother of A.C., born May 17, 2014; E.C., born December 29, 2015; and Q.C., born January 23, 2018. The father of the children died during the trial court proceedings.

{¶3} Through prior juvenile cases, CSB first removed A.C. from Mother's custody and later removed E.C. shortly after his birth, because of Mother's ongoing problem with substance

abuse. Mother eventually achieved sobriety and stability and both children were returned to her legal custody. Those cases were closed during April 2017.

{¶4} This case began on July 10, 2019, when CSB filed complaints to allege that A.C., E.C., and Q.C. were neglected and/or dependent children. At that time, Mother was moving back and forth between Ohio and North Carolina, while her children had been left in the care of different relatives who were no longer willing or able to care for them. CSB was also concerned that Mother had recently tested positive for methamphetamine and amphetamine and could not provide her children with a safe and stable home. By agreement of the parties, the children were later adjudicated dependent and placed in the temporary custody of CSB.

{¶5} The court-adopted case plan focused on Mother obtaining and maintaining stable income and housing and obtaining mental health and substance abuse assessments and following all treatment recommendations. Mother engaged in reunification services throughout the next several months. She obtained a mental health assessment at Summit Psychological Associates and followed up with counseling there. Mother also obtained a substance abuse assessment at Oriana House and, although residential treatment was recommended, she instead completed an intensive outpatient treatment and aftercare program. By December 2019, the trial court allowed her to begin having extended, unsupervised visits with the children because of her ongoing negative drug screens and "significant progress with her case plan requirements."

{¶6} On February 21, 2020, CSB moved the trial court to return legal custody of the children to Mother, under an order of protective supervision. CSB informed the trial court that Mother had "worked hard to complete her case plan objectives[,]" and summarized her compliance with the reunification requirements of the case plan. The guardian ad litem

submitted a report to support the agency's motion to return the children to Mother's home, also emphasizing her compliance with the reunification goals of the case plan.

{¶7} Pursuant to a trial court order journalized on March 3, 2020, the children were returned to Mother's legal custody under an order of protective supervision. On June 15, 2020, however, the caseworker swabbed Mother for a drug test, which later tested positive for amphetamine and methamphetamine. The children were removed from Mother's home and placed in the emergency temporary custody of CSB.

{¶8} Over the next few weeks, Mother again tested positive for amphetamine and methamphetamine at least two more times. On July 27, 2020, CSB moved for permanent custody of all three children. The agency alleged that the children could not be placed with Mother within a reasonable time or should not be placed with her and that permanent custody was in their best interest. R.C. 2151.414(B)(1)(a). To establish the first prong of the permanent custody test, CSB alleged numerous alternative factors under Revised Code Section 2151.414(E).

{¶9} Following the seven-day hearing held in March and April 2021, the trial court terminated parental rights and placed the children in the permanent custody of CSB. To support its finding that the children could not or should not be returned to Mother's custody, the trial court found only that CSB had established the factor alleged under Section 2151.414(E)(1), that Mother had failed to remedy the conditions that caused the children to be placed outside the home.

{¶10} Mother appeals and raises four assignments of error. Because her first assignment of error is dispositive of this appeal, this Court confines its review to that assigned error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT MOTHER FAILED CONTINUOUSLY AND REPEATEDLY TO SUBSTANTIALLY REMEDY THE CONDITIONS THAT BROUGHT THE CHILDREN INTO CARE PURSUANT TO [REVISED CODE SECTION] 2151.414(E)(1).

{¶11} Mother's first assignment of error challenges the trial court's first-prong finding under Revised Code Sections 2151.414(B)(1)(a) and 2151.414(E)(1), that the children could not or should not be returned to her custody because she failed to substantially remedy the conditions that caused the children to be placed outside the home. Through this assignment of error, Mother argues that the trial court erred, as a matter of law, by considering or failing to consider certain evidence that did or did not fall within the explicit scope of Section 2151.414(E)(1). Specifically, she argues that the trial court erred by failing to fully consider evidence about her significant case plan compliance during this case but instead improperly based its finding on (1) evidence of her drug problems that predated this case; (2) evidence of her failure to complete trauma therapy, which she argues was not part of the court-ordered case plan; and (3) evidence about her case plan compliance after CSB filed its motion for permanent custody. Following a discussion about the "conditions" that Mother was required to remedy in this case, this Court will separately address Mother's arguments that the trial court erred by failing to consider and/or considering that evidence.

**"Conditions" to be Remedied**

{¶12} Mother's children were adjudicated dependent under Section 2151.04(C), which defines the children as dependent because their "condition or environment is such as to warrant the state, in the interests of the child[ren], in assuming [their] guardianship[.]" Section

2151.28(L) further provides that, if the court adjudicates children dependent, it "shall incorporate that determination into written findings of fact and conclusions of law * * * [that] * * * include * * * specific findings as to the existence of any danger to the child[ren] and any underlying family problems that are the basis for the court's determination" that the children are dependent. Such findings in the adjudicatory decision would set forth the "conditions" that caused the children's removal. *In re G.D.*, 9th Dist. Summit No. 27337, 2014-Ohio-3476, ¶ 16. In this case, although the trial court referenced the allegations in the complaint when finding dependency, it made no independent, agreed or otherwise, factual findings to explain the dependency adjudication, but none of the parties objected to that deficiency in the adjudicatory decision.

{¶13} Nevertheless, this Court may also look to the reunification requirements of the court-ordered case plan to determine the "conditions" that Mother was required to remedy in this case. *Id*. at ¶ 17. The original case plan, and all amended case plans adopted by the trial court, required Mother to obtain a psychological assessment, and follow all recommendations; obtain a substance abuse assessment, and follow all recommendations; and obtain and maintain safe and stable income and housing.

### Mother's Initial Case Plan Compliance

{¶14} Mother asserts that, in its finding that Mother had failed "continuously and repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside [their] home[,]" the trial court essentially ignored that she had made significant progress in remedying those conditions for most of the first year of this case before CSB moved for permanent custody. In its judgment entry, the trial court noted only briefly that Mother had achieved an extended period of sobriety during this case and that the children were returned to her custody.

{¶15} By the time of the hearing, reflecting upon Mother's relapse nine months earlier, several witnesses and the trial court questioned the effectiveness of Mother's initial reunification efforts during this case to remedy her mental health and substance abuse problems. For example, Mother's substance abuse assessment had recommended inpatient, residential drug treatment, but Mother completed intensive outpatient treatment instead. The record clearly reflects, however, that all parties opined that Mother made significant progress during the time that she completed drug treatment and otherwise made progress to remedy the "conditions" that caused the removal of her children from the home. In fact, the caseworker testified that she had encouraged Mother to complete intensive outpatient drug treatment. She did not testify that she warned Mother that only residential treatment would constitute a sufficient effort to comply with the case plan.

{¶16} Moreover, as explained already, Mother worked on the mental health and other reunification goals of the case plan for many months. She achieved sobriety and stabilized her life, was permitted to have longer and unsupervised visits with the children in her home from December 2019 through February 2020, and by early March 2020, the children were returned to her home. All parties agreed at that time that Mother had made significant reunification progress and that it was in the children's best interest to be placed with Mother. In the amended case plan filed after the children were returned home, CSB emphasized that Mother had maintained sobriety for almost six months and that she had followed through with and was maintaining all treatment and services for herself and the children.

{¶17} Although Mother relapsed and began using drugs again three months later, her relapse did not negate the many months of significant reunification progress that Mother had made prior to that time. We agree with Mother that the trial court did not properly consider her significant reunification efforts during this case in its finding that she failed "continuously and

repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside [their] home[.]" R.C. 2151.414(E)(1).

### Mother's Drug Use Prior to this Case

{¶18} Mother further argues that the trial court erred by considering evidence of her drug use from the prior juvenile cases involving her two oldest children because those facts fall outside the scope of the explicit language of Revised Code Section 2151.414(E)(1). This Court agrees.

{¶19} Section 2151.414(E)(1) required the trial court to find that the children "cannot be placed with either parent within a reasonable time or should not be placed with either parent[ ]" if it found clear and convincing evidence to demonstrate that:

> Following the placement of the child outside the child's home * * * , the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

{¶20} This Court has previously held that "[t]his language is plain and unambiguous" and requires the trial court to "find clear and convincing evidence that the parents failed to remedy the conditions that caused the children's removal" after the children were placed outside the home in the current case. *In re A.T.*, 9th Dist. Summit No. 28220, 2016-Ohio-5907, ¶ 13. In *In re A.T.*, because the trial court relied solely on facts that predated the children's removal from the home in that case, this Court held that the trial court erred as a matter of law in finding that Section 2151.414(E)(1) had been satisfied. *Id.* at ¶ 14-16. Although *In re A.T.* involved the trial court's consideration of evidence about the parents' case plan compliance while the children remained in the home under an order of protective supervision, the language of Section 2151.414(E)(1) has also been construed to prohibit the trial court from considering facts about case plan compliance in a prior, closed case. *See In re B.C.*, 4th Dist. Athens Nos. 14CA43 and

14CA48, 2015-Ohio-2720, ¶ 44; *In re Mark H.*, 6th Dist. Lucas No. L-98-1238, 1999 WL 253163, (Apr. 30, 1999), * 8. This Court agrees that Section 2151.414(E)(1) applies only to the reunification efforts of a parent after the children are removed from the home in the current case.

{¶21} In this case, although the trial court did not base its Section 2151.414(E)(1) finding solely on Mother's drug use in the prior juvenile cases, it explicitly relied on that evidence to support its finding. In its recitation of evidence supporting its finding under this subsection, the trial court pointed to Mother's "long-standing history of significant drug use" that dated back to 2015. The trial court explicitly considered improper evidence from prior cases to determine that Mother had failed consistently and repeatedly to remedy her parenting problems in this case. We agree with Mother that the trial court erred in considering that evidence to establish a first-prong finding under Section 2151.414(E)(1).

### Trauma Therapy

{¶22} Mother next asserts that the trial court erred by faulting her for failing to make significant progress in trauma therapy, because that was not part of the court-ordered case plan. As explained already, the court-ordered case plan required Mother to obtain a psychological assessment and follow any treatment recommendations. Mother obtained a psychological assessment at Summit Psychological Associates and followed its counseling recommendation by engaging in counseling with one of its counselors there. That psychological assessment did not mention Mother's past trauma, nor did it recommend that she engage in trauma therapy.

{¶23} Instead, at some point during this case, CSB apparently opined that Mother's counseling sessions were not meeting her needs. CSB had become concerned that Mother had a history of trauma and needed trauma therapy. Without amending the case plan, CSB asked Mother to complete another mental health assessment, which she voluntarily did. An assessment

Mother obtained during November 2020, more than three months after CSB moved for permanent custody, recommended for the first time that Mother engage in trauma therapy. Mother later began trauma therapy but had not made significant progress by the time of the hearing.

{¶24} Aside from the requirement for trauma therapy being imposed on Mother several months after the agency had moved for permanent custody, that requirement was never made a part of the case plan. Although the trial court emphasized that Mother already had a mental health component in the case plan and that trauma therapy was necessarily a part of that component, she had not been ordered to obtain another mental health assessment or comply with its recommendations.

{¶25} The procedures for the creation and amendment of a case plan are statutorily mandated by Revised Code Section 2151.412. To be binding on the parties, the case plan and all amendments must be filed with and adopted by the trial court. R.C. 2151.412(D)-(F). Notably, a caseworker is not authorized to "amend a parent's case plan by merely telling the parent to complete extra tasks." *In re S.D-M.*, 9th Dist. Summit Nos. 27148 and 27149, 2014-Ohio-1501, ¶ 26, citing R.C. 2151.412(F)(2). Although the caseworker asked Mother to obtain a second mental health assessment and follow its recommendations, Mother was not required by the case plan or a court order to so. Consequently, the trial court erred by faulting Mother for failing to complete trauma therapy in this case.

### Post-Motion Facts about Case Plan Compliance

{¶26} Finally, Mother raises a challenge to the trial court considering evidence about her case plan compliance between July 27, 2020 (when CSB filed its permanent custody motion) and March and April 2021, when the hearing was held. The propriety of the trial court considering,

in its first-prong finding, evidence about a parent's case plan compliance after the agency moved for permanent custody has not been explicitly addressed by this Court or the Ohio Supreme Court. This Court has held that post-motion facts and circumstances may be considered insofar as they pertain to the best interest of the child, because that is a "fluid concept." *In re L.P.*, 9th Dist. Summit No. 29963, 2021-Ohio-3183, ¶ 26, citing *In re G.L.S.*, 9th Dist. Summit Nos. 28874 and 28893, 2018-Ohio-1606, ¶ 16. Although the Ohio Supreme Court and this Court have held that post-motion facts may not form the basis of a first-prong finding on the "12 of 22" factor, there is no clear guidance on whether post-motion facts may form the basis of an alternative first-prong finding under R.C. 2151.414(E). *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, syllabus; *In re K.G.*, 9th Dist. Wayne Nos. 03CA0066, 03CA0067, and 03CA0068, 2004-Ohio-1421, ¶ 30.

{¶27} Although arguments could be made as to why this same reasoning should or should not apply to the trial court's findings under Section 2151.414(E)(1), neither CSB nor the guardian ad litem have addressed this legal issue on appeal. Moreover, because this issue is not dispositive of this appeal, this Court declines to address it now.

{¶28} For the reasons stated above, the trial court's factual findings did not satisfy the requirements of the explicit language of Section 2151.414(E)(1). As this Court explained in *In re A.T.*, the trial court failed to make proper factual findings under the explicit terms of Section 2151.414 and this Court cannot make those findings for the first time on appeal, as "'[d]oing so would * * * exceed our jurisdiction as an appellate court.'" *In re A.T.*, 2016-Ohio-5907, at ¶ 15, quoting *In re D.K.*, 9th Dist. Summit Nos. 26272 and 26278, 2012-Ohio-2605, ¶ 11. Consequently, the trial court committed reversible error in its finding under Section 2151.414(E)(1) and Mother's first assignment of error is sustained.

**REMAINING ASSIGNMENTS OF ERROR**

**{¶29}** Because Mother's remaining assignments of error have been rendered moot by this Court's disposition of her first assignment of error, they will not be addressed. *See* App.R. 12(A)(1)(c).

III.

**{¶30}** Mother's first assignment of error is sustained insofar as the trial court erred in basing its finding under Revised Code Section 2151.414(E)(1) on evidence about Mother's drug use prior to this case, on her failure to comply with reunification requirements that were not part of the court-ordered case plan, and by failing to fully consider evidence of her substantial case plan compliance during this case. Because it was not necessary to the disposition of this appeal, this Court did not address the propriety of the trial court considering, in its Section 2151.414(E)(1) finding, evidence about Mother's compliance with the case plan after CSB moved for permanent custody. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JENNIFER HENSAL
FOR THE COURT


CARR, J.
SUTTON, J.
CONCUR.


APPEARANCES:

CHERYL L. GREEN, CORINNE HOOVER SIX, LINDSAY L. MORETTA, and RACHEL L. SMICK, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.